UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:15-CR-096 |
| | ) |
| GREGORY HAROLD MOORE | ) |

# MEMORANDUM AND ORDER

The defendant pled guilty to six counts of the superseding indictment. He will be sentenced on August 11, 2016. The United States Probation Office has prepared and disclosed a Presentence Investigation Report ("PSR") [doc. 96], to which the defendant has filed three objections. For the reasons that follow, those objections will be overruled.

I.

*Objection One*

At paragraph 38, the probation office recommends that the defendant's offense level be increased by two pursuant to advisory guideline 2D1.1(b)(2). That guideline applies, "If the defendant used violence, made a credible threat to use violence, or directed the use of violence . . . ." U.S. Sentencing Guidelines Manual § 2D1.1(b)(2) (2015). In his cursory objection, the defendant appears to argue either: (a) that he did not in fact "use violence, make a credible threat of violence, or direct the use of violence"; or, (b) that he did not do so toward "any other member of the conspiracy or potential witness for the United States."

As to the first of these issues, in his plea agreement the defendant plainly acknowledges that he did indeed make a credible threat of violence *and* directed the use of violence. Moreover, the defendant pled guilty to Count 19 of the superseding indictment which charges a violation of 18 U.S.C. § 1513(b)(2). That statute prohibits "knowingly engag[ing] in any conduct and thereby caus[ing] bodily injury to another person or damag[ing] the tangible property of another person, or threaten[ing] to do so, with intent to retaliate against any person for any information relating to the commission or possible commission of a Federal offense . . . given by a person to a law enforcement officer." 18 U.S.C. § 1513(b)(2).

This case is a controlled substance prosecution. A search warrant was executed at the defendant's residence following a series of undercover buys. [Plea agreement, doc. 72, ¶¶ 4(b)-(i)]. Some drugs were located, as were ledgers which recorded the drug debts owed to the defendant by various customers and codefendants. *Id.* ¶ 4(h). One such listed customer was "IV." *Id.*

In recorded jail calls, the defendant told his codefendant wife Pamela Moore that IV was "the snitch" and "the narc." *Id.* ¶¶ 4(j)-(k). In a subsequent call, the defendant told his wife, in reference to IV, to have codefendant Donnie Wallen "beat that n*****'s brains out," "beat the brakes off that mother f***er," and "beat the f*** out of that black n*****." *Id.* ¶ 4(l). The defendant explained that Wallen should commit the violence because it was Wallen who "set him up with the 'snitch' or 'IV.'" *Id.*

Pamela Moore subsequently met with the other codefendants and "explained what the defendant wanted done to the IV [sic] and why." *Id.* § 4(m). "Wallen agreed to take

2

care of the job for the defendant." *Id.* Over the next few days, the defendant's confederates continued to discuss what the defendant "wanted . . . take[n] care of" – specifically, "beat[ing] the hell out of" IV because he was "the snitch." *Id.* ¶¶ 4(q)-(s).

These admissions plainly show that the defendant directed the use of violence and that his codefendants considered his threats to be credible. As for the defendant's apparent alternate argument that § 2D1.1(b)(2) only applies when threats or violence are toward a coconspirator or potential witness, the defendant cites no authority imposing such a limitation and this court's survey of Sixth Circuit caselaw and the guideline application notes finds none. Guideline 2D1.1(b)(2) is correctly applied in this case and the defendant's first objection will be overruled.

II.

*Objection Two*

At paragraph 39, the PSR increases the defendant's offense level by two pursuant to advisory guideline 2D1.1(b)(12). That guideline applies, "If the defendant maintained a premises for the purpose of . . . distributing a controlled substance . . . ." U.S. Sentencing Guidelines Manual § 2D1.1(b)(12) (2015).

In his plea agreement, the defendant admits that he distributed controlled substances from (and that drugs and drug ledgers were stored at) his residence. [Doc. 72, ¶¶ 4(b)-(e), (h)-(j), (n)-(q)]. As such, the defendant wisely does not now object that he did not maintain a premises for the purpose of distributing controlled substances. Instead, his second objection argues that § 2D1.1(b)(12) should not be applied because

3

"this conduct has already been addressed in the base offense level found in paragraph 37 of the PSR." The court disagrees.

At paragraph 37, as happens in virtually all drug cases, the defendant's base offense level is determined pursuant to advisory guideline § 2D1.1(a)(5) and § 2D1.1(c)'s Drug Quantity Table. The present PSR then considers the various "Specific Offense Characteristics" listed in § 2D1.1(b) which increase (or in some cases decrease) a drug defendant's offense level. The present defendant's argument – that an offense level should be based solely on drug quantity – renders all of § 2D1.1(b) redundant. The defendant cites no authority to support such an incredible notion, and the court is certain that there is none. *See United States v. Cole*, 359 F.3d 420, 428 n.13 (6th Cir. 2004) (citation omitted) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones."). The defendant's second objection will be overruled.

III.

*Objection Three*

At paragraph 41, the PSR increases the defendant's offense level pursuant to advisory guideline § 3B1.1(b) based on his role his aggravating role in the offenses of conviction. Guideline 3B1.1(b) recommends a three-level increase, "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive . . . ." U.S. Sentencing Guidelines Manual § 3B1.1(b) (2015). The application notes to § 3B1.1 provide that the court should evaluate factors such as a defendant's exercise of decision-making authority,

4

the nature of his participation in the commission of the offenses, any recruitment of accomplices, the claimed right to a larger share of the fruits of the crimes, the nature and scope of the illegal activity, the degree of participation in planning the offenses, and the degree of control and authority the defendant exercised over others. *Id.* cmt. n.4. By his cursory third objection, the defendant simply protests that he "was not a manager or supervisor and that the activity involved did not have five or more participants or was otherwise extensive."

As an initial matter, the court concludes that this criminal conspiracy had at least six participants. Five persons were indicted in this case and all have pled guilty. In his plea agreement, the defendant acknowledges various participation by each of his four codefendants and at least one other "unindicted co-conspirator." [Doc. 72, ¶¶ 4(j), (l)-(n), (p)-(s)].

The defendant's plea agreement further shows that he: (1) exercised decision-making authority; (2) profited significantly from the large amount of drugs that were distributed; and (3) was a planner with control and authority over his codefendants. As noted, the defendant stored the drugs at his home. After his arrest, he instructed his codefendant wife to transfer $30,000.00 worth of stashed pills to codefendants Jones and Davis for resale. *Id.* ¶¶ 4(j), (l). He told Jones to collect one drug debt, directed her to tell codefendant Wallen to collect another debt, and asked Pamela Moore about the status of yet another sum owed. *Id.* ¶¶ 4(n), (p).

On August 28, 2015, the defendant boasted to Jones that law enforcement only found approximately $20,000.00 of his drug proceeds. "Kathy Jones agreed and said

5

because, 'You invested it, yep. You invested it.'" *Id.* ¶ 4(p). The defendant then said to Jones (regarding the value of some hidden drugs), "you wouldn't believe if I told you, you would trip out." *Id.*

The defendant's planning authority is further illustrated by his use of codefendants to carry out his plan of "beating the hell out of" IV. Control of those codefendants is shown by events which took place on August 24 and 25, 2015.

> Pamela Moore met with Kathy Jones, David Allen Davis and Donnie Dwayne Wallen. During the meeting, Pamela Moore explained what the defendant wanted done to the [sic] IV and why. Wallen agreed to take care of the job for the defendant. . . . Pamela Moore told the defendant that she told Kathy Jones what was needed and that Kathy Jones agreed to sell drugs . . . and give the money to Pamela Moore.

*Id.* ¶ 4(m).

Based on all these admissions, the court concludes that the managerial/supervisory adjustment is properly applied in this case. The defendant's participation in this conspiracy was extensive. He supplied controlled substances to co-conspirators. He directed those persons to sell drugs, collect debts, and exact revenge on his behalf. Guideline 3B1.1(b) is properly applied in this case.

## IV.

### *Conclusion*

For the reasons provided herein, the defendant's PSR objections are **OVERRULED**. Sentencing remains set for August 11, 2016, at 1:15 p.m. in Greeneville.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge