UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:15-CR-096 |
| | ) | |
| GREGORY HAROLD MOORE | ) | |

**MEMORANDUM AND ORDER**

Now before the Court is the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i) and for appointment of counsel. [Doc. 219]. The United States has responded in opposition the motion. [Doc. 223]. The defendant has not replied within the time allowed by this court's Local Rules.

The matter is now ripe for the Court's consideration. For the reasons stated below, the defendant's motion will be denied.

## I. BACKGROUND

In August 2016, this Court sentenced the defendant to a net term of 360 months' imprisonment. That guideline sentence consisted of a 300-month term for methamphetamine distribution, concurrent 240-month terms for threatening an informant and for three other controlled substance distribution counts, and a consecutive 60-month term for possessing a firearm in furtherance of a drug trafficking crime.

The defendant is presently housed at FCI Edgefield with a projected release date of March 10, 2041. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Feb. 22, 2021). He now moves for compassionate release due to the COVID-19 pandemic, depression, bipolar disorder, "anxiety disorders," back and neck injuries, his rehabilitative

efforts, and ineffective assistance of counsel. He further argues that he is serving a "Draconian" sentence for a "non-violent" drug offense.

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned

to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but, as of November 20, 2020, are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[1] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

**A. Exhaustion**

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 219]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

**B. Merits**

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, depression, bipolar disorder, "anxiety disorders," back and neck injuries, his rehabilitative efforts, and ineffective assistance of counsel. He further argues that he is serving a "Draconian" sentence for a "non-violent" drug offense. Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, this Court has considered the defendant's arguments and the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

[1] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> > (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
> >
> > (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
> . . .

(5) any pertinent policy statement—

> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court will first address the defendant's contention that his attorney was ineffective in not filing certain motions, "abandon[ing] his only defense," and "not put[ting] the Government's case through any meaningful adversarial testing." [Doc. 219]. The Court has already addressed and rejected these general claims in their proper setting, a motion under 28 U.S.C. § 2255. [Case No. 2:17-cr-140, docs. 6-7]. In that case, the present defendant claimed that his attorney "did not object to anything," "lied to me," and "tricked me into pleading guilty." [*Id.*, doc. 1]. This Court denied the defendant's § 2255 motion, and he has not obtained appellate court authorization to file a second or successive one. His ineffective assistance claims will not be considered further herein.

Turning to the defendant's medical claims, at his correctional institution there are currently two inmates and 23 staff positive for COVID-19, with 218 inmates and 10 staff having recovered, and three inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 22, 2021). These numbers are not insignificant, but the Court simultaneously notes that outside the prison setting our nation remains in grave crisis in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020)

("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

As for the specific medical conditions cited by the defendant, the BOP's SENTRY Report categorizes him as Care Level 1 in terms of both physical and mental health. "Care Level 1 inmates are less than 70 years of age and are generally healthy. They may have limited medical needs that can be easily managed by clinician evaluations every 6 to 12 months." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Feb. 22, 2021). There are no medical records before the Court confirming the present severity or impact of the cited conditions. It therefore does not appear that the defendant's mental and physical health issues are so extraordinary as to warrant compassionate release. Further, all of these conditions predate the defendant's commission of his offenses of conviction in this case and did not render him unable to commit those crimes. [Presentence Investigation Report ("PSR"), doc. 96, ¶¶ 72-75].

Turning to the defendant's rehabilitative efforts, SENTRY shows that he is working for UNICOR, has completed some wellness and drug education programming, and has incurred no disciplinary sanctions. These points are commendable but do not amount to extraordinary and compelling grounds for compassionate release.

Regarding the nature and circumstances of the instant offenses and the defendant's history and characteristics, the defendant held a managerial/supervisory role in this case. [Doc. 96, ¶ 41]. The instant drug conspiracies spanned from approximately January 2014 to October 2015 and were responsible for the distribution of a significant amount of methamphetamine, hydrocodone, oxymorphone, and oxycodone. [*Id.*, ¶¶ 10-19, 23-25, 29]. Two loaded guns were found in the defendant's bedroom, and approximately 46 more firearms were in gun safes in his basement. [*Id.*, ¶ 18]. Post arrest, the defendant continued his leadership role from jail, telling his cohorts to continue collecting debts and to retrieve and distribute large amounts of methamphetamine and pills which had not yet been discovered by law enforcement. [*Id.*, ¶¶ 19-27].

Additionally, the defendant became convinced that the knew the identity of the "snitch" who "set him up." [*Id.*, ¶¶ 19-21]. He instructed his coconspirators to retaliate against the purported informant, up to and including "beat[ing] the f*** out of that black n*****" and "beat[ing] that n*****'s brains out." [*Id.*, ¶¶ 21-28]. The defendant's large-scale drug distribution, his leadership role, his possession of 48 firearms, and his violent retaliatory instincts all illustrate his significant danger to the public.

Prior convictions include driving offenses, public intoxication, drug possession, assault, evading or resisting arrest (twice), and three cases of domestic assault. [*Id.*, ¶¶ 52-57]. In one domestic assault case, the victim reported that the defendant struck her repeatedly with a pistol and threatened to shoot her. [*Id.*, ¶ 56]. Another victim reported that the defendant attempted to strangle her. [*Id.*]. There have been three other arrests for aggravated assault or domestic violence. [*Id.*, ¶¶ 64, 66-67]. There is also a substance

abuse history beginning by age 12 and continuing through the date of his 2015 arrest. [Doc. 76].

The Court has weighed the relevant § 3553(a) factors, the circumstances of this case, the defendant's history and characteristics, and the arguments raised in the instant motion. The Court recognizes that the defendant has physical and mental health issues, and his post-sentencing rehabilitative efforts to date are commended. Those points, however, are not uncommon and are neither "extraordinary" nor "compelling" such as to warrant the extreme remedy of compassionate release. Additionally, those points are substantially outweighed by the defendant's managerial role in this case and by the danger of violence and retaliation seen throughout his criminal history. Further, more than 20 years of actual time remains on his sentence—a sentence imposed less than five years ago. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate.").

Compassionate release on these facts would not reflect the seriousness of the offenses of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes. The pending compassionate release motion will accordingly be denied.

## III. APPOINTMENT OF COUNSEL

As for the defendant's request for appointed counsel, there is no constitutional right to an attorney in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no

further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has *discretion*, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." In exercising that discretion, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond the capability of an ordinary *pro se* litigant. Moreover, pursuant to this court's Standing Order SO-19-04, Federal Defender Services of Eastern Tennessee ("FDSET") has already been appointed to represent all defendants who file a *pro se* § 3582(c)(1)(A) motion. FDSET has filed notice that, after a review of the defendant's file, it does not intend to file any pleadings in this case. [Doc. 224].

## IV. CONCLUSION

As provided herein, the defendant's motion for compassionate release and for the appointment of counsel [doc. 219] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge